UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00481-MOC-DSC

| | | |
|---|---|---|
| **MARTIN MCGHEE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| **AETNA LIFE INSURANCE COMPANY AND BANK OF AMERICA SHORT TERM DISABILITY PLAN,** | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon Defendant's Motion for Summary Judgment (#24) and Plaintiff's Cross-Motion for Summary Judgment (#26). After the parties fully briefed the issues, the court heard oral arguments on the motions.

Plaintiff Martin McGhee brought this action to recover short-term disability benefits from Defendants, Aetna Life Insurance Company ("Aetna") and Bank of America Short Term Disability Plan ("STD Plan") (collectively "Defendants"). As a former employee of Bank America ("BOA"), Plaintiff was enrolled in the STD Plan, which is funded by BOA and administered by Aetna, pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*. (1982). Plaintiff submitted a claim for STD benefits in October 2011, which was denied initially and again upon review. Plaintiff argues that Aetna's assessment of his STD claim was not supported by substantial evidence and that Defendants abused their discretion in denying his claim. Defendants contend that Plaintiff has no right to bring this action, arguing that Plaintiff waived and released his claims against Defendants upon execution of a General Release & Program Agreement in exchange for a severance package with

1

BOA upon leaving the company. Alternatively, Defendants argue that their decision to deny Plaintiff's claim for STD benefits should not be disturbed because substantial evidence in the record supports the decision. For the reasons that follow, the court finds that Plaintiff is entitled to seek relief in this court despite the agreement he signed with BOA in exchange for his severance package. However, the court also finds that Defendants did not abuse their discretion in denying Plaintiff STD Benefits. Accordingly, the court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

Plaintiff worked for BOA from June 2004 to October 2011, holding several high-level positions throughout his tenure with the company. As a BOA employee, Plaintiff was eligible to participate in, and did participate in, the STD Plan established by BOA. His final position with BOA was as a Senior Vice President and a Senior Change Analyst. In this position, Plaintiff supported projects related to corporate change initiatives impacting the business. His job responsibilities included designing, developing, and completing project deliverables as well as coordinating activities for designated projects to ensure that the goals and objectives of the projects were accomplished within the prescribed time frame and funding parameters.

Plaintiff's last full day of work at BOA was on October 4, 2011. On October 18, 2011, Plaintiff requested short-term disability leave starting on October 4, 2011, claiming he was disabled due to severe anxiety, depression, and post-traumatic stress disorder. Plaintiff informed Aetna that he was currently being treated by his physician, Dr. Holly Layman. Aetna faxed a behavioral health clinician statement form (BHCS) to Dr. Layman, who returned the form to Aetna on November 3, 2011. Dr. Layman diagnosed Plaintiff with anxiety, depression, and chest pains, and stated in her cover note that Plaintiff "is unable to perform his daily functions at work

until proper psychiatric counseling has begun." Administrative Record ("Admin. R.") at 7000121. Dr. Layman did not include any behavioral observations, but noted that Plaintiff was "normal but stressed." Id. at 7000123. On November 7, 2011, Aetna denied Plaintiff's entitlement to STD benefits, stating that Plaintiff had not provided sufficient evidence showing that he was unable to complete the duties of his job. Aetna explained in a letter to Plaintiff:

> While the provider indicated a diagnosis of anxiety and depression, the symptoms reported does [sic] not provide the needed clinical information to indicate that you would be unable to perform the duties of your occupation from a behavioral health standpoint.
>
> In order to substantiate an inability to perform the core elements of your occupation as a Senior Change Analyst, from a psychological perspective, your provider(s) would have to submit examination findings which document the presence of impairments. Examples of such findings would be behavioral observations, including the frequency, duration and intensity of symptoms observed, the results of a formal mental status examination, or any performance-based tests of psychological functioning with standardized scores.

Letter from Aetna to Martin McGhee (Nov. 7, 2011), Admin. R. at 7000076. Plaintiff appealed Aetna's decision by a letter dated April 19, 2012. Plaintiff claimed that a number of personal situations contributed to his anxious and depressed condition, including a breakup with his girlfriend of 2 ½ years, his mother's illness, sleep deprivation, and the death of his grandfather. Throughout the spring, Plaintiff submitted additional records from Dr. Layman, as well as from Dr. Jonathan Stoudmire, a psychiatrist, and Jennifer Overton, a licensed clinical social worker. On May 31, 2012, Aetna acknowledged Plaintiff's appeal and placed it on hold until June 28, 2012 to allow Plaintiff to continue to submit additional information from his medical providers. Aetna then extended its review until August 1, 2012 pending a peer review, which was ultimately performed by Dr. Lawrence Burstein, Ph.D. on July 13, 2012. Dr. Burstein, stating that he had reviewed the full record of medical treatment that Plaintiff supplied, found the record did not support impairment from a psychological standpoint. He noted that while the record

3

substantiated Plaintiff's subjective complaints of anxiety and depression, "they did not contain any findings to corroborate Plaintiff's complaints." Id. at 7000095.

On August 1, 2012, Aetna provided Dr. Layman and Dr. Stoudmire with a copy of the report asking whether they agreed with Dr. Burstein's findings. Aetna claims that it received no response from Dr. Stoudmire but that on August 15, 2012, Dr. Layman's nurse informed Aetna that Dr. Layman agreed with the peer review report and the decision to deny Plaintiff's claim for benefits. Id. at 7000056. Notes in the record from Aetna's conversation with Dr. Layman's office indicate that Dr. Layman stated that despite some psychological findings, Plaintiff suffered from no functional impairment that precluded him from performing his occupation. Id. On August 24, 2012, Aetna upheld its decision to deny Plaintiff's claim for STD benefits. One year later, on August 23, 2013, Plaintiff initiated this civil action against Defendants seeking review of Aetna's decision to deny Plaintiff STD benefits.

### A. The STD Plan

The STD plan under which Plaintiff asserts benefits allows BOA employees time off from work as well as financial benefits that replace a portion of the employee's income for up to 26 weeks from the date of disability. The Plan states that "[f]or purposes of determining eligibility for STD benefits, disabled is defined as your inability to perform your essential occupation functions, including working your regularly scheduled hours, for more than seven consecutive calendar days because of a pregnancy, illness, injury, non-elective surgery or hospitalization." Def. Mem. S. J., Exhibit A, 2. To be eligible for benefits, Plaintiff must provide evidence of his inability to perform his occupational duties:

*Eligibility*

\*\*\*
- An associate must be receiving appropriate care and treatment on a continuing basis from an eligible treating health care provider while on STD.

- A treating health care provider is defined as a legally licensed Medical Doctor, Advanced Practice Registered Nurse (APRN), Nurse Practitioner (NP) and/or Physician Assistant (PA) who is treating the associate for a medical condition.

Appropriate care and treatment must meet the following conditions:
- It is received from an eligible health care provider listed above whose medical training and clinical experience are suitable for treating the disability
- It is necessary to meet the basic health needs and is of demonstrable value
- It is consistent in type, frequency and duration of treatment with relevant guidelines of national medical, research and health care coverage organizations and government agencies
- Is consistent with the diagnosis of the condition
- It has the purpose of maximizing medical improvement

Non-psychiatrist health care providers may provide treatment for up to 30 days for behavioral health or substance abuse conditions.

. . .

Benefits are payable, after the seven day elimination period, as long as the disability continues, for up to 26 weeks. After 26 weeks of continuous disability, an associate may be eligible to apply for Long-term Disability (LTD) benefits.

Id. The Plan also states that STD benefits will be paid only if there is satisfactory objective medical evidence of disability:

*What the STD Plan does not cover*

Benefits are not paid in the following circumstances:

. . .

- For any period during which you are not receiving appropriate care and treatment on a continuing basis from a legally licensed eligible health care provider

- If you fail to have a physical examination and/or provide satisfactory objective medical evidence of disability or continuing disability or other information requested by the STD Claims Administrator

Id.

**B. The Severance Package Agreement**

On October 1, 2013, Plaintiff signed a General Release & Program Agreement (the "Agreement") with BOA in exchange for a severance package. The Agreement provides several provisions relating to Plaintiff's ability to bring lawsuits, either pending or in the future, against BOA and several related parties. Section 3(a) of the Agreement, titled, "General Release of Claims/Covenant Not to Sue," states:

> I fully waive, release and forever discharge Bank of America and all of its officers, directors, employees, assigns, agents, plans and plan trustees…(the "Released Parties") from any manner of suits, actions, or causes of action…existing at the time I sign this Agreement…under any possible legal, equitable, contract, tort, or statutory theory … this General Release includes, but is not limited to, claims arising out of or in any way related to my employment and/or separation from employment, such as, by way of example only, claims under…[ERISA].

Def. Mem. S. J., Exhibit C, 1. The agreement also requires the signer to represent that he has not brought any legal action against BOA or certain affiliated parties and to acknowledge that the signer's rights to benefits under the Agreement are limited. Section 5 of the Agreement, entitled "Absence of Certain Claims," provides as follows:

> a. I acknowledge that as of the date I sign this Agreement, I have not filed or otherwise pursued any charges, complaints or claims of any nature against Bank of America or any Released Party with any local, state or federal government agency or court on or prior to the date of signing this Agreement, which have not been dismissed, closed, withdrawn or otherwise terminated, unless otherwise permitted by law.
>
> b. I further acknowledge and agree that, except for benefits under any Bank of America plans that have vested or will vest according to the terms of those plans, Bank of America has and shall have no obligation to provide me with any payments, benefits or consideration other than as described in my personalized CSP Program Assistance summary and the Guide.

Id. at Sections 5(a), (b). Finally, the Agreement specifically references ERISA claims:

> I understand that for benefit plans governed by the Employee Retirement Income Security Act of 1974 (ERISA) and equity or similar awards granted or assumed by the Company, *my eligibility for benefits will be determined in accordance with the terms of the applicable plan or other governing documents. Nothing in this*

> *Agreement shall impair, diminish or interfere with any rights, privileges or benefits I have with respect to ERISA plans*, equity award agreements or similar governing documents.

Id. at Section 14(a) (emphasis added).

## II. STANDARDS OF REVIEW

A motion for summary judgment "shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is proper 'unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the ... pleading[s], but [must] ..., by affidavits or as otherwise provided in [Rule 56], ... set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When cross-motions for summary judgment are submitted to a district court, each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant. Mellen v. Bunting, 327 F.3d 355, 363 (4th Cir. 2003) (citing Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir.2003)).

ERISA allows plan participants or beneficiaries who are denied benefits under an employee benefit plan to challenge the plan administrator's denial in federal court. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). Unlike claims made on over-the-counter insurance plans that a consumer may acquire in the marketplace,

7

> ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan; it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators provide a 'full and fair review' of claim denials, and it supplements marketplace and regulatory controls with judicial review of individual claim denials.

Id. at 115 (citations omitted). In the Fourth Circuit, a district court reviewing the final decision of a plan administrator

> must be guided by principles of trust law, taking a plan administrator's determination as 'a fiduciary act (i.e., an act in which the administrator owes a special duty of loyalty to the plan beneficiaries).' Second, courts must 'review a denial of plan benefits under a *de novo* standard unless the plan provides to the contrary.' Third, when the plan grants the administrator 'discretionary authority to determine eligibility for benefits ... a deferential standard of review is appropriate.' And fourth, '[i]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.'

Champion v. Black & Decker (U.S.), Inc., 550 F.3d 353, 358 (4th Cir.2008) (citations omitted).

Here, the BOA STD Plan gives Aetna (the STD Plan administrator) discretion in deciding questions of eligibility for benefits; thus, this court reviews such determinations for an abuse of discretion. See Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 629–30 (4th Cir. 2010). Under an abuse of discretion standard, the court may not "substitute [its] own judgment in place of the judgment of the plan administrator." Id. at 630. Thus, a trial court will not disturb a plan administrator's decision if it is "reasonable." Id. A decision is "reasonable" if it: (1) results from a deliberate, principled reasoning process; and (2) is supported by "substantial evidence." Id. In turn, substantial evidence is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. DuPerry v. Life Ins. Co. of North Am., 632 F.3d 860, 869 (4th Cir. 2011). In determining reasonableness, the Court of Appeals for the Fourth Circuit has held that courts should look to several factors, including: (1) the language of the plan; (2) the

purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motive and any conflict of interest it may have. Williams, 609 F.3d at 630.

Finally, this court's review is limited to the record that was before the plan administrator at the time of final determination. Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994) ("[A]n assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time.").

With such framework in place, the court has carefully considered the cross motions for summary judgment. Where cross motions for summary judgment are filed, such motions are

> no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.

Wright & Miller, 10A Fed. Prac. & Proc. Civ.3d § 2720. In reviewing the arguments of the parties, the court has treated the motions and the citations of evidence in the administrative record in the manner it would a bench trial by first considering the evidence contained in the administrative record which Plaintiff has cited in his favor and then considering the record evidence by Defendant. See Stewart v. Bert Bell/Pete Rozelle NFL Player Retirement Plan, 2012 WL 122362 (D. Md. 2012). For the reasons that follow, the court upholds the final decision of Defendants.

**III. ANALYSIS**

*A. Plaintiff's Rights to Pursue STD Claims Against Defendants Under the Agreement*

Plaintiff filed suit against Defendants approximately two weeks before executing the Agreement with BOA in exchange for his severance package. At the time he executed the Agreement, Plaintiff did not notify BOA of his claims against Defendants nor did he attempt to carve out this claim from the General Release provision, but instead represented that he had no pending claims against the "Released Parties." Defendants argue that they are Released Parties and therefore, Plaintiff waived and released his claims against them by signing the Agreement. Plaintiffs read the Agreement differently, arguing that the Agreement only released claims against BOA, not Aetna and the BOA STD Plan.

More persuasively, Plaintiff argues that regardless of whether Defendants were intended to be "Released Parties" under the "General Release" section of the Agreement, he preserved his rights to pursue STD benefits in light of the clear and unambiguous language of Section 14(a) of the Agreement. As noted above, Section 14(a) provides, "Nothing in this Agreement shall impair, diminish or interfere with any rights, privileges or benefits I have with respect to ERISA plans, equity award agreements or similar governing documents." Defendants argue that this language is intended to comply with the anti-alienation provision of ERISA, 29 U.S.C.A. § 1056, which provides, "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1). The court finds Defendants' argument futile. Section 14(a) stands on its own in the Agreement under "Miscellaneous Provisions" within the subsection "Other Benefit Plans." It makes no reference whatsoever to the anti-alienation provision of ERISA. In fact, it specifically references eligibility for benefits under "plans governed by [ERISA]," like the STD Plan at issue here. The court finds that while BOA may have very well *intended* to release Defendants through the language of Section 3(a), the

10

language of 14(a) clearly and unambiguously establishes that Plaintiff, as the signatory to the Agreement, maintained his "rights, privileges [and] benefits … with respect to ERISA plans." One such right of Plaintiff is to bring a civil action, as he has done here, under Section 502(a) of ERISA to "recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132. In light of the conflicting terms of the Agreement, one of which purports to waive all claims that Plaintiff might have against BOA and its affiliates (which quite possibly was intended to include Defendants), and another that expressly reserves his right to seek ERISA benefits (from Defendants), the court cannot find that by signing the Agreement, plaintiff waived and released his claims against these particular Defendants in this particular case. The plain language of the Agreement does not bar Plaintiff's claim in this court challenging Defendant's denial of his claim for STD benefits. The court will therefore review the decision itself for an abuse of discretion.

### B. *Defendants' Decision to Deny Plaintiff's STD Claim*

In considering whether Defendants' decision to deny Plaintiff's claims was reasonable, the court first finds that Aetna's decision resulted from a deliberate, principled reasoning process. In processing Plaintiff's claim initially, Aetna reviewed the sole piece of medical evidence that Plaintiff provided—the BHCS form from Dr. Layman. In its initial denial letter, Aetna explained that Plaintiff had a right to appeal the denial of benefits, and very clearly stated the type of medical evidence it needed in order to find that Plaintiff was entitled to STD benefits due to an inability to perform his job:

> In order to substantiate an inability to perform the core elements of your occupation … your provider(s) would have to submit examination findings which document the presence of impairments. Examples of such findings would be behavioral observations, including the frequency, duration and intensity of symptoms observed, the results of a formal mental status examination, or any performance-based tests of psychological functioning with standardized scores.

11

Admin. R. at 7000076. Aetna deliberately and fairly gave Plaintiff notice of the information he needed to submit relevant to his STD claim. Once Plaintiff provided further information in relation to his appeal, Aetna again considered the medical evidence before it, solicited a peer review, communicated with Plaintiff's physicians, and ultimately affirmed its denial of Plaintiff's claim for benefits because Plaintiff did not establish that he was unable to perform the essential functions of his position. The court finds this process reasonable, principled, and deliberate. Despite Plaintiff's complaints of mental health issues at the time he made his claim for STD benefits, he simply did not provide Defendants with sufficient objective medical evidence of disability showing that he was unable to perform the essential functions of his occupation, as was required by the terms of the STD Plan.

Plaintiff argues that Aetna's decision-making process was not reasoned and principled because it proffered two different reasons for denying Plaintiff's claim initially and upon review, which he argues, violates the "fair and full review" guarantees of ERISA claims under 29 U.S.C. § 1133. This argument is without merit because Plaintiff misconstrues the facts.[1] The initial denial letter from Aetna stated that Plaintiff's claim was denied based on the lack of objective medical evidence showing Plaintiff had symptoms that would prevent him from performing his job. The final letter in Plaintiff's appeal again stated that the evidence Plaintiff provided in support of his claim lacked the necessary findings to show that he was unable to perform the functions of his job:

> All of the medical information submitted for your appeal was reviewed in its entirety. The documentation submitted for review included a Behavioral Health

---

[1] Plaintiff urges the court to analogize the facts at hand to those in Gagliano v. Reliance Standard Life Ins. Co., 547 F.3d 230 (4th Cir. 2008). In that case, the Fourth Circuit addressed a claimant's right to a notice of appeal when a plan administrator initially denied a claimant's disability benefits for one particular reason, and upon administrative appeal, denied benefits on "completely different" grounds. Id. at 235-36. The facts here, however, are materially different from Gagliano, in that Aetna reiterated its same rationale for denying Plaintiff STD benefits in both its initial and final letters. The fact that Aetna offered an additional reason in support of its decision to deny Plaintiff benefits in its final letter does not render its rationale "completely different."

12

> Clinician Statement completed by Dr. Layman, dated October 31, 2011, which noted you feeling anxious, stressed, and recommended for you stay [sic] out of work. You were noted to irritable [sic] with a depressed affect. It was noted that you were cooperative with an appropriate affect and normal judgment. Although Dr. Layman's findings noted some degree of emotional distress, there was an insufficient amount of formal measurements addressing cognitive or emotional functioning to substantiate the presence of a functional impairment which would preclude you from working.
>
> The records indicate that you were also under the care of Dr. Stoudmire, Psychiatrist. Dr. Stoudmire treated you on March 29, 2012 and indicated that your affect was limited range and there was minimal grooming. Your mental status was in normal limits. You reported to have stress and feeling anxious. You were prescribed Zoloft and you were unable to tolerate it. It was noted that you only took the medication for five days as a result of this. You were also reported to have increased anxiety. Dr. Stoudmire's findings did not, however, include any formal measurements of cognitive or emotional functioning to substantiate the presence of a functional impairment.
>
> …
>
> [B]ased on the documentation provided for review, there was a lack of examination findings to substantiate a psychological impairment within the areas of cognitive, emotional, and behavioral functioning that have prevented you from performing your essential occupation functions for the time period of October 4, 2011 and forward. The examination findings suggested a variable level of functioning through the time period under consideration, and, although noting some degree of emotional distress marked by depression and anxiety, did not include a sufficient amount of measurements of cognitive or emotional functioning to substantiate the presence of an emotional impairment.

Letter from Aetna to Martin McGhee (Aug. 24, 2012), Admin. R. at 70000784. Thus, Defendants denied Plaintiff's claim on appeal for the same reason it denied his claim initially—a lack of objective medical evidence in the record of Plaintiff's disability.

In addition to stating that it denied Plaintiff's claim based on lack of objective medical evidence, Aetna cited the provision of the plan stating that a claimant "must be receiving appropriate care and treatment on a continuing basis from an eligible treating health care provider while on STD." Id. Neither party disputes the fact that Plaintiff did receive medical treatment in November and December 2011. By not obtaining treatment during this time,

13

Plaintiff failed to comply with the terms of the STD Plan.[2] Defendants, however, make no reference to this fact in their final letter. As explained above, the denial was based on lack of objective evidence showing disability, not the gap in treatment. The court finds that Aetna's reference to the two months without treatment did not raise a new basis for denying Plaintiff's claim and that Defendants properly denied Plaintiff's claim for benefits, initially and upon review, based on consistent reasoning.

In considering the second prong of whether Defendants' decision to deny Plaintiff's claims was reasonable, the court finds that Aetna's decision is supported by substantial evidence. After a careful review of the record, the court agrees with Defendants that the medical records, peer review, and Aetna's correspondence with Plaintiff's treating physicians indicate that while Plaintiff had many subjective complaints at the time he made the claim for STD benefits, he provided no objective medical evidence of disability to support the conclusion that he was unable to perform the essential functions of his occupation. For example, Dr. Layman's records simply reiterated Plaintiff's subjective complaints of stress and anxiety—she made no reference to Plaintiff's ability to concentrate, communicate, or organize his thoughts. See Admin. R. at 7000122-124. Instead, based on her observations, she concluded that Plaintiff was able to follow commands and that his reasoning and judgment were within normal limits. Id. Similarly, Dr. Stoudmire opined that Plaintiff was unable to work, but failed to provide any information explaining his conclusion. Admin. R. at 7000128.

Plaintiff argues that Aetna's decision was unreasonable in light of his physicians' statements regarding his anxiety and depression, but Plaintiff fails to articulate what objective medical evidence, if any, exists to support his claim for benefits. Aetna acknowledged Plaintiff's anxiety,

---

[2] Plaintiff argues that he did not seek treatment during this time because he was in a catatonic state. While that may be the case, Plaintiff has a duty to comply with the terms of the STD Plan if he wants to claim its benefits.

depression, and stress, but found that there were not enough objective medical findings to find a "variable level of functioning" within his job. After a careful review of the record, the court agrees and finds that substantial evidence supports Defendants' decision.

In considering the factors of reasonableness as articulated in Williams, the court finds that the STD Plan language was clear, its terms were well-established, and that Plaintiff had no apparent difficulty understanding the plan. Moreover, the court finds that Aetna's potential conflict of interest by serving as both the fiduciary and the plan administrator did not prejudice the outcome of Plaintiff's STD claim. Here, Aetna gave Plaintiff guidance on the type of information it needed in order to find that Plaintiff qualified for STD benefits under the plan. Upon reviewing the medical information that Plaintiff submitted, Aetna, in its discretion, found that Plaintiff had not submitted sufficient evidence showing that his condition qualified him for benefits. A review of the record affirms Aetna's conclusion.

Because the court finds that Defendants' decision to deny Plaintiff STD benefits was reasonable in that it resulted from a deliberate, principled reasoning process and was supported by substantial evidence, it will uphold Aetna's decision denying Plaintiff the requested benefits. See Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 629–30 (4th Cir. 2010).

**ORDER**

**IT IS, THEREFORE, ORDERED**, that Defendants' Motion for Summary Judgment (#24) is **GRANTED**, Plaintiff's Cross-Motion for Summary Judgment (#26) is **DENIED**.

Signed: October 28, 2014

_____
Max O. Cogburn Jr.
United States District Judge